# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

SPEECHNOW.ORG,                            )
DAVID KEATING,                            )
FRED M. YOUNG, JR.,                       )
EDWARD H. CRANE, III,                     )
BRAD RUSSO, and                           )
SCOTT BURKHARDT                           )
                                          )
          Plaintiffs,        )
                                          )
    v.                                    )          Civil Case No. 1:08-cv-00248 (JR)
                                          )
FEDERAL ELECTION COMMISSION,              )
                                          )
          Defendant.         )
_____)

---

# PLAINTIFFS' REPLY IN SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTION

---

Steven M. Simpson (DC Bar No. 462553)
William H. Mellor (DC Bar No. 462072)
Robert Gall (DC Bar No. 482476)
Paul M. Sherman (DC Bar No.978663)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Email: wmellor@ij.org, ssimpson@ij.org,
bgall@ij.org, psherman@ij.org

Stephen M. Hoersting*
Bradley A. Smith*
Michael P. Darner*
CENTER FOR COMPETITIVE POLITICS
124 W. Street South, Suite 201
Alexandria, VA 22314
Tel: (703) 894-6800
Email: smhoer@aol.com,
mdarner@campaignfreedom.org
BSmith@law.capital.edu

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*

Dated: March 12, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 5

   I.    Plaintiffs Are Substantially Likely to Succeed on the Merits. ................. 5

       A.    SpeechNow.org is Not the Type Of Group That the Supreme
             Court Has Allowed to be Subjected to Contribution Limits.................. 6

             1.    Contribution limits impose more than a marginal restriction
                    on the First Amendment rights of SpeechNow.org and its
                    supporters. ................................................................ 6

             2.    SpeechNow.org's independence from candidates and groups that
                    work with or have access to candidates distinguishes this case
                    from those on which the FEC relies. ................................ 9

       B.    The FEC Has Not Demonstrated an Interest Sufficient to Justify
             Limiting Contributions to SpeechNow.org Under Any Level of Scrutiny. .......... 13

             1.    Spending by independent groups and the possibility of gratitude by
                    candidates is not corruption. ...................................... 13

             2.    The Supreme Court's concern with the "distorting effects of immense
                    aggregations of wealth" cannot justify the application of contribution
                    limits to SpeechNow.org. .......................................... 15

  II.    Plaintiffs Will Suffer Irreparable Harm Without an Injunction. ........................... 17

       A.    Plaintiffs' Injuries are Actual and Certain. ................................. 17

       B.    Plaintiffs' Face Imminent Injury. ............................................ 20

       C.    Plaintiffs' Injury is Beyond Remediation. ................................... 21

       D.    A Preliminary Injunction Will Prevent the Harm to Plaintiffs
             Caused by the Contribution Limits. .......................................... 22

 III.    An Injunction Will Not Substantially Injure the FEC and Will Advance the
         Public's Interest. ............................................................... 23

**Page**

**CONCLUSION** ....................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990) ..........................................15,16

*Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342 (2d Cir. 2003) .....................................20

*Buckley v. Valeo,* 424 U.S. 1 (1976) ................................................................................. *passim*

*California  Medical Assoc.  v. FEC*, 453 U.S. 182 (1981) ........................................................9,10

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006).......................20

*Christian Knights of the Ku Klux Klan Invisible Empire, Inc. v. District of Columbia*,
919 F.2d 148 (D.D.C. 1990) ...............................................................................................19,20

*Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981) ............................6,7,8,12

*Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990)...........................................................23

*Columbia Hosp. for Women Found. v. Bank of Tokyo-Mitsubishi*,
15 F. Supp. 2d 1(D.D.C. 1997) ...............................................................................................17

*Community-Service Broadcasting of Mid-America, Inc. v. FCC*,
593 F.2d 1102 (D.C. Cir. 1978)...............................................................................................21

*Donaldson v. United States Dep't of Labor*, 930 F.2d 339 (4th Cir. 1990).............................22,23

*Edgar v. MITE*, 457 U.S. 624 (1982)............................................................................................23

*Elrod v. Burns*, 427 U.S. 347 (1976) ...................................................................................17,19

*FEC v. Colorado Republican Campaign Committee*, 533 U.S. 431 (2001).................................10

*FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986) ...............................................12,16

*FEC v. National Conservative Political Action Comm.*, 470 U.S. 480 (1985)...................... *passim*

*FEC v. Wisconsin Right to Life, Inc.*, 127 S. Ct. 2652 (2007)...........................................3,4,20,21

*First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978)....................................................14

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1998) ...............................................................22

*McConnell v. FEC*, 540 U.S. 93 (2003)................................................................................ *passim*

**Page(s)**

*Mills v. Alabama*, 384 U.S. 214 (1966) ...................................................24

*Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000) ...............17

*Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377 (2000) ..................9

*NTEU v. United States*, 927 F.2d 1235 (D.C. Cir. 1991)...............................19

*Ragin v. New York Times Co.*, 726 F. Supp. 953 (S.D.N.Y. 1989) .................14

*Randall v. Sorrell*, 126 S.Ct. 2479 (2006) ...............................................3,13

*Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974).............22

*Sears Roebuck & Co. v. NLRB*, 473 F.2d 91 (D.C. Cir. 1972)........................22

*Suster v. Marshall*, 149 F.3d 523 (6th Cir. 1998) .....................................23

*Veitch v. Danzig*, 135 F.Supp.2d 32 (D.D.C. 2001) ...................................17

*Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987)......................................19

*Wisconsin Right to Life, Inc. v. FEC*, Civ. No. 04-1260,
2004 WL 3622736 (D.D.C. Aug. 17, 2004) ..............................................20

*Wisconsin Right to Life, Inc. v. FEC*, No. 04-1260,
2006 WL 2666017 (D.D.C. Sept. 14, 2006) .............................................21

## Codes, Rules and Statutes

2 U.S.C. § 441a(a)(1)(C)........................................................................17
            § 441a(a)(3)..........................................................................17

11 CFR §114.5(b) ...........................................................................14,19

26 U.S.C. § 527(c) ..............................................................................16

D.C. Code § 29-971.06. ........................................................................15

**Page(s)**

## Publications

Richard Briffault, *The 527 Problem...and the Buckley Problem*,
73 Geo. Wash. L. Rev. 1701 (2005) ............................................................................14

Gregg D. Polsky, *A Tax Lawyer's Perspective on Section 527 Organizations*,
28 Cardozo L. Rev. 1773 (2007) ................................................................................16

## INTRODUCTION

SpeechNow.org is a group of citizens who wish to spend their own money on their own speech. Its supporters wish to associate with SpeechNow.org because they share its views about First Amendment rights and how to protect those rights, and they want to pool their funds in order to amplify their voices beyond what any of them could achieve on their own. SpeechNow.org will operate completely independently of candidates, political parties, corporations, unions and any other entity the Supreme Court and federal law have indicated might raise concerns about the corruption of candidates or its appearance. The steps SpeechNow.org has taken to ensure its independence from these entities were not devised solely by SpeechNow.org itself; they are dictated by federal law. SpeechNow.org will simply follow the steps detailed by Congress and by the FEC for groups that wish to make expenditures independent of candidates and entities related to candidates and thus free of any taint of corruption. If SpeechNow.org cannot achieve independence in this manner, then it is not possible for any group or individual to become independent of candidates or groups that create concerns about corruption.

These basic facts—SpeechNow.org's nature as a group of individuals associating for a common speech-related purpose and its independence from any entity that could create concerns about corruption—make this case factually distinct from any case on which the FEC relies and, indeed, from any case in which the Supreme Court has upheld contribution limits. SpeechNow.org can create no more concerns about corruption or its appearance than an individual making the same independent expenditures on the same advertisements. Indeed, the FEC admits as much by arguing that Fred Young, one of SpeechNow.org's potential supporters, could simply spend his own money on the exact same advertisements free of any limits on the

funds he chooses to devote to those advertisements.  *See* FEC's Memorandum in Opposition to Motion for Preliminary Injunction ("FEC's Opp. Mem.") at 34.

This is a key point in this case and one that the FEC and amici—in their combined 80 pages of briefing—fail to address.  If Fred Young spending roughly the same amount of money on exactly the same advertisements raises no concerns about corruption, then how can SpeechNow.org raise any concerns about corruption by doing precisely the same thing?

The only answer the FEC can give is that Fred Young is not a group.  When Fred Young spends his money directly on advertisements, he is making an "expenditure" under the law, rather than a "contribution."  Fred Young would devote his own money to advertisements, rather than the money of those who agree with him, and thus he is not a "political committee."  Fred Young may thus operate free of any limits on the funds he can devote to his advertisements. However, if Fred Young decides to help fund the same advertisements by joining with others and donating money to SpeechNow.org, suddenly he may only spend $5000.

But this approach not only strips the right of association out of the First Amendment, it treats the campaign finance laws—and the terms "contribution," "expenditure" and "political committee"—as constitutionally-sacrosanct "magic words" that apply regardless of context, regardless of the nature of the First Amendment rights involved, and regardless of any legitimate concerns about corruption.  The FEC thus approaches this case in much the same manner that its general counsel approached SpeechNow.org's advisory opinion request.  It applies statutory terms to facts, and then discusses a number of decisions that have interpreted those statutory terms in entirely different circumstances.  The FEC points out that the Supreme Court in *Buckley v. Valeo* concluded that contributions to candidates and campaign organizations conveyed only "the undifferentiated symbolic act of contributing," 424 U.S. 1, 21 (1976), ignoring the fact that

the Court in other cases has concluded that contributions to groups like SpeechNow.org convey much more than that and must be protected as exercises of the fundamental right of association as well as the right to free speech. Likewise, the FEC points out that the Court has repeatedly upheld contribution limits, ignoring the fact that it has done so for contributions to candidates or groups that can act as conduits to candidates, that work closely with candidates, or that can be said to provide "access" to candidates—that is, groups that raise the specter of actual or perceived *corruption*. But the Supreme Court has never held that the mere possibility that a candidate will feel gratitude toward a group that spends money on political speech is enough to justify contribution limits, nor has it held that contribution limits of any type are necessarily constitutional, as the FEC implies.

In short, context matters. Just last term, the Supreme Court held in *FEC v. Wisconsin Right to Life, Inc.* ("*WRTL II*") that the electioneering communications ban could not be applied to a group that did not raise the concerns for which the ban was passed, despite the fact that the Court upheld the law on its face a scant four years before. *See* 127 S.Ct. 2652 (2007). In *Randall v. Sorrell*, the Court struck down limits on contributions made directly to candidates despite the fact that it has repeatedly upheld contribution limits through the years. *See* 126 S.Ct. 2479 (2006). The Court made clear in both cases that the government has an obligation, not simply to demonstrate that restrictions on speech serve some hypothetical purpose, but that they further legitimate state interests as applied in a given set of circumstances.

Seeming to understand that it lacks any coherent argument that SpeechNow.org raises real concerns about corruption, the FEC offers a version of "corporate form" corruption that eliminates the key factor that has justified special limits on corporations—the corporate form. In the FEC's view, SpeechNow.org, an unincorporated association, raises the same concerns as a

for-profit corporation, because it allegedly enjoys the same state-created benefits. But this argument ignores the campaign finance laws, themselves, which single out *corporations* for special treatment, not *unincorporated associations*. Moreover, under the FEC's new version of corporate form corruption, virtually any entity that is legally distinct from the individuals who comprise and operate it would be subject to limits on its speech. The special limits that apply to corporations are based on attributes unique to corporations and find justification in at least a century's worth of law and jurisprudence. There are no grounds for applying the same approach to unincorporated associations that accept no corporate or union funds.

The FEC accuses Plaintiffs of taking a crabbed view of corruption, but this betrays the FEC's singular focus on the possibility of corruption to the exclusion of all competing constitutional values. In *WRTL II*, the Supreme Court made clear that the First Amendment cannot be swept aside by ever more attenuated concerns with preventing the possibility, not of corruption itself, but of efforts to circumvent provisions that were put in place to prevent the possibility of corruption. Such a "prophylaxis-upon-prophylaxis" approach is inconsistent with the First Amendment. *See* 127 S.Ct. at 2672. The possibility of "circumvention" is not the same thing as the reality or appearance of corruption, and there is a limit to how far this rationale can be stretched. *See id.* That limit must be a group, like SpeechNow.org, that is completely independent of candidates and the entities that are connected to them; otherwise, the very notion of "independent" expenditures is an illusion. In short, Plaintiffs' position should be viewed, not as a crabbed view of corruption, but as an appropriately vigorous view of First Amendment rights. To paraphrase the Supreme Court in *WRTL II*, the First Amendment demands nothing less. *See* 127 S.Ct. at 2674.

## ARGUMENT

Plaintiffs request narrow relief in this motion. Although this lawsuit challenges both contribution limits as they apply to SpeechNow.org and its supporters as well as the registration, administrative and reporting requirements for PACs, in this motion Plaintiffs seek to preliminarily enjoin only the contribution limits. However, the FEC and amici in their briefs address *all* of the Plaintiffs' challenges in this case. Because Plaintiffs are not seeking to enjoin the PAC registration, administrative and reporting requirements in this motion, they will confine their reply to arguments concerning the contribution limits.

## I.    Plaintiffs Are Substantially Likely to Succeed on the Merits.

Plaintiffs' challenge relies on two crucial differences between SpeechNow.org and other groups that the Supreme Court has concluded can be subjected to contribution limits. First, as a group of individuals joining together to speak collectively about a topic of importance to each of them, SpeechNow.org's supporters convey much more than the "undifferentiated, symbolic act of contributing" with their donations. *Cf. Buckley*, 424 U.S. at 21. Their donations are an exercise of both their rights to associate with one another for a common speech purpose and their rights to free speech. Second, SpeechNow.org is entirely independent of candidates, parties and any other groups that make contributions to candidates, work with candidates, or that could provide access to candidates. As a result, SpeechNow.org cannot present any threat of corruption or its appearance that would justify limiting its contributions.

The FEC ignores these points entirely and focuses on cases that involved either groups whose contributors were conveying only the symbolic expression of support for a candidate or groups that raised more pressing concerns about corruption or its appearance because of their involvement with candidates. The FEC's position simply cannot be squared with *Citizens*

*Against Rent Control v. City of Berkeley*, 454 U.S. 290 (1981), and *FEC v. National Conservative Political Action Comm*, 470 U.S. 480 (1985) ("*NCPAC*"); nor is it consistent with constitutional protections for independent expenditures. By contrast, the Plaintiffs' position can be squared with the Supreme Court's campaign finance decisions by recognizing that SpeechNow.org is not the type of organization that raises any concerns about corruption or its appearance.

In short, the FEC's position relies entirely on the notion that there is a rigid distinction between contributions and expenditures, regardless of the entity that accepts or spends those funds. In the FEC's view, limits on contributions can never involve a serious restraint on First Amendment rights regardless of the group to which they apply; and contribution limits always serve some interest in combating corruption, again, regardless of the group to which they apply. But this is not the approach the Supreme Court has taken, as Plaintiffs demonstrate below.

While Plaintiffs believe that the contribution limits that apply to SpeechNow.org and its supporters should receive strict scrutiny, under any level of scrutiny, the FEC cannot demonstrate that SpeechNow.org raises any concerns about corruption that have ever justified contribution limits before.

> **A.    SpeechNow.org is Not the Type Of Group That the Supreme Court Has Allowed to be Subjected to Contribution Limits.**
>
> **1.    Contribution limits impose more than a marginal restriction on the First Amendment rights of SpeechNow.org and its supporters.**

The FEC relies on *Buckley* for the proposition that contribution limits impose only "marginal restriction[s]" on the First Amendment rights of contributors, but it ignores the proper context in which the Court's approach to contribution limits applies. *See* FEC's Opp. Mem. at 9. In this section of *Buckley* the Court was referring to limits on contributions to "candidates and campaign organizations." 424 U.S. at 21. According to the Court, such contributions serve only

as a "general expression of support for the candidate and his views" but do not "communicate the underlying basis for the support." *Id*. As a result, contributions to candidates and campaign organizations express only "the undifferentiated, symbolic act of contributing," which is not diminished by limits on such contributions. *Id*. Under this view, the contributor is engaging only in speech by proxy because it is the candidate who is speaking, not the contributor. *Id*.

As Plaintiffs demonstrated in their opening brief, the Court itself has made clear on two occasions that this speech-by-proxy argument does not apply where, as here, supporters of a group agree with its message and wish to add their voices to that message and speak collectively through the group. *See NCPAC*, 470 U.S. at 495 (stating that "the contributors obviously like the message they are hearing" and "want to add their voices to that message; otherwise, they would not part with their money"); *Citizens Against Rent Control*, 454 U.S. at 298 ("Contributions by individuals to support concerted action by a committee advocating a position on a ballot measure is beyond question a very significant form of political expression."). *See also* Plaintiffs' Opening Brief at 16-17.

It is no answer to say, as the FEC does, that *Citizens Against Rent Control* involved a ballot issue election that raised no concerns about corruption. *See* FEC's Opp. Mem. at 13. While true, this point went solely to the state's alleged interest in limiting the group's contributions; it was irrelevant to the separate conclusion that the contribution limits imposed a serious burden on both the contributors' and the group's rights to free speech and association. The Court made this clear at two points in the decision—first, when it stated that the contribution limits directly affected the right of association by imposing a limit on groups while allowing individuals to spend as much as they desired on their speech; and second, when it recognized that a limit on the group's contributions necessarily operated to limit its expenditures. *See Citizens*

7

*Against Rent Control*, 454 U.S. at 296, 299-300.  The question of whether the government could demonstrate an interest sufficient to justify the burden on rights to speech and association was entirely separate and did not impact the Court's conclusion that the contribution limits burdened those rights in the first place.

Nor can the FEC avoid the Court's rejection of the speech-by-proxy argument in *NCPAC*. The FEC ignores entirely the relevant discussion in *NCPAC*, focusing instead on the fact that the law at issue involved limits on expenditures, rather than contributions.  *See* FEC's Opp. Mem. at 10-11.  However, in *NCPAC*, the FEC defended the expenditure limit by claiming that contributions to the committees "do not constitute individual speech, but merely 'speech by proxy.'"  470 U.S. at 494.  In rejecting this argument, the Court provided two independent rationales.  First, as the FEC notes, the Court recognized that the limits at issue in the case operated on expenditures, rather than contributions.  *Id.* at 493-95.  Second, the Court noted that the contributors were doing more than engaging in speech by proxy.  They were "add[ing] their voices" to the group's message and thereby speaking collectively.  *Id.* at 495.  As the Court concluded the point, "[t]o say that their collective action in pooling their resources to amplify their voices is not entitled to full First Amendment protection would subordinate the voices of those of modest means as opposed to those sufficiently wealthy to be able to buy expensive media ads with their own resources."  *Id.* at 495.  Indeed, under the FEC's approach, that is precisely what the contribution limits would achieve.  The FEC proposes that instead of SpeechNow.org producing and broadcasting its ads, Fred Young should simply do so alone.  *See* FEC's Opp. Mem. at 34.  But this would only subordinate the voices of other SpeechNow.org supporters to Fred Young's voice.  In effect, the FEC's position seems to be that those of modest means have no cause to complain as long as they can find a rich person who has decided to

express the same views.  But this position denigrates the right of association and would

accomplish exactly what the Supreme Court criticized in *NCPAC*.

In *Buckley*, the Supreme Court upheld contribution limits in part because they remedied

the problem of large campaign contributions, while "leaving persons free to engage in

independent political expression." *Buckley*, 424 U.S. at 28.  As the Court explained, the limits

"do not undermine to any material degree the potential for robust and effective discussion of

candidates and campaign issues by individual citizens, associations, the institutional press,

candidates, and political parties."  *Id*. at 29.  SpeechNow.org *is* such an avenue of "independent

political expression" and imposing contribution limits on it will undermine effective discussion

of candidates by individuals and associations.

### 2. SpeechNow.org's independence from candidates and groups that work with or have access to candidates distinguishes this case from those on which the FEC relies.

The FEC claims that the Supreme Court has made clear that groups making only

independent expenditures can be subjected to contribution limits, but it never produces a case

that actually supports this proposition.  *Buckley* involved limits on contributions made directly to

candidates or campaign organizations, but the Court never said or implied in that case that

contribution limits could constitutionally be applied to groups that make only independent

expenditures.  *See* 424 U.S. at 28-29.  *Nixon v. Shrink Missouri Government PAC* involved limits

on contributions to state candidates under state law and was a straightforward application of

*Buckley*'s holding on contribution limits.  *See* 528 U.S. 377, 391 (2000).  *California Medical

Assoc. v. FEC* ("*CalMed*") involved limits on a multicandidate committee that made *both*

independent expenditures and contributions directly to candidates.  *See* 453 U.S. 182, 203 (1981)

(Blackmun, J., concurring in part and concurring in the judgment).[1]  *FEC v. Colorado Republican Campaign Committee* involved limits on a political party's expenditures made in coordination with its candidates.  The Court upheld these limits because of the danger that unlimited coordinated party expenditures would function as "disguised contributions" that might be made to the party as "a *quid pro quo* for improper commitments from the candidate."  533 U.S. 431, 446 (2001) (quoting *Buckley,* 424 U.S. at 47).  *McConnell v. FEC* involved limits on soft money donations made to political party committees and limits on electioneering communications financed by funds from corporate treasuries and unions.  540 U.S. 93, 132 (2003).  The Court upheld most of these provisions on the basis of an extensive record demonstrating that candidates and parties were offering access to candidates in exchange for soft money donations to political party committees.  *See id*. at 153-54.

Each of these cases involved limits on contributions directly to candidates or to groups that could be used to funnel money to candidates or that worked closely with candidates and could provide access to them.  All of these groups are distinctly different from SpeechNow.org, which is independent of candidates and any entities that present concerns about corruption or its appearance.

The FEC attempts to avoid this fact by arguing that the Supreme Court has upheld limits on contributions to groups connected to candidates even where those contributions were earmarked for independent expenditures or for administrative expenses, rather than candidate contributions.  *See* FEC's Opp. Mem. at 17.  But the FEC provides the response to this argument

---

[1] Whether or not Justice Blackmun's view that contribution limits could not be applied to groups that made only independent expenditures is dicta, the fact remains that Justice Blackmun concurred only in the plurality's conclusion that the limits were constitutional as applied to multicandidate committees that make contributions directly to candidates.  *See id*. at 202-03.  As a result, *CalMed* stands only for the proposition that contribution limits are constitutional as applied to multicandidate committees because they present the possibility of circumvention of limits on contributions to candidates.  SpeechNow.org presents no such concerns.

in its own brief: money is fungible. *Id*. at 16. Thus, money given to a group that regularly works with candidates and can provide access to them could conceivably find its way to the candidates or could benefit them by freeing up funds to be used more directly to benefit the candidate. At the very least, money going to groups such as these could create the perception of corruption because the public recognizes that such groups are tied to candidates and political parties.

The Supreme Court made this point explicitly in *McConnell*, where it relied on the fact that "'[t]here is no meaningful distinction between the national party committees and the public officials who control them'" in upholding BCRA's soft money restrictions. *See* 540 U.S. at 155 (internal citations omitted). In short, it was the nature of the organizations at issue in that case— state and federal party committees—and their close connections with each other and with candidates that led the Court to uphold the soft money restrictions. *See id*. The Court did not conclude, as the FEC and amici claim, that independent expenditures as such raise concerns about corruption or that contributions to any group can be limited regardless of how they will be spent. As the Court itself stated, *"[g]iven this close connection and alignment of interests*, large soft-money contributions to national parties are likely to create actual or apparent indebtedness on the part of federal officeholders, regardless of how those funds are ultimately used." *Id*. (emphasis added).[2] Thus, read in its proper context, the long quote from *McConnell* on which the FEC relies does not support its broad claims. *See* FEC's Opp. Mem. at 15. It is simply another example of the Supreme Court's conclusion that the close connection between federal and state party committees and their close connection with candidates raise unique concerns about corruption. As a result, the effect of the soft money restrictions on funds used by those

---

[2] Amici claim that this same passage supports their argument, but they are able to make that claim only by misquoting the passage and taking it completely out of context. *See* Brief of Amici at 15-16.

entities for noncoordinated expenditures was not a bar to those restrictions. *McConnell*, 540 U.S. at 152 n.48.

But this point in no way supports the FEC's argument that contributions to SpeechNow.org create concerns about corruption or its appearance, because there are no similar "close connections" between SpeechNow.org and candidates or party committees. Thus, there is no possibility that money donated to SpeechNow.org will find its way to candidates or party committees or that SpeechNow.org will somehow "sell" access to candidates. In fact, the Supreme Court addressed the concern that its holding in *McConnell* could apply to groups like SpeechNow.org when it made clear that its conclusion turned on the "close relationship of federal officeholders and candidates to their parties" and thus would not apply to entities that lacked such a relationship. *See* 540 U.S. at 156 n.51.

The fact is, the Supreme Court has never squarely addressed the question at the heart of this case—whether groups that make only independent expenditures in candidate elections can be subject to contribution limits.[3] What the Court has held is that independent expenditures receive the highest protections under the First Amendment, *see NCPAC*, 470 U.S. at 493-96; that individuals may make unlimited independent expenditures, *see Buckley*, 424 U.S. at 45-51; that groups whose members pool their funds solely to make independent expenditures exercise fundamental rights to free speech and association, *see NCPAC*, 470 U.S. at 495; that limits on contributions to such groups severely burden their rights to speech and association and limit the quantity of their speech, *see Citizens Against Rent Control*, 454 U.S. 295-96; and that

---

[3] The FEC claims that *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986), supports its argument because SpeechNow.org has a "major purpose" of "campaign activity." FEC's Opp. Mem. at 17-18. But *MCFL*'s discussion of "major purpose" had nothing to do with whether groups with a major purpose can constitutionally be subjected to contribution limits. The passage on which the FEC relies occurred in a discussion of *disclosure obligations* where the Court was addressing the FEC's claim that the Court's decision would lead to "massive *undisclosed* political spending by similar entities" to MCFL. *See* 479 U.S. 238, 262 (1986) (emphasis added). In any event, the Court's discussion of major purpose in *MCFL* is dicta and cannot be read to mean that every group with a "major purpose" can necessarily be subjected to contribution limits.

contribution limits must always be justified by real concerns about corruption, *see Randall*, 126 S.Ct. at 2491. *See also McConnell*, 540 U.S. 185 n.72 (stating that the government must show "concrete evidence" that a particular type of transaction is corrupting or gives rise to the appearance of corruption). Together, these principles lead inexorably to the conclusion that the contribution limits that apply to SpeechNow.org and its supporters are unconstitutional.

> **B.    The FEC Has Not Demonstrated an Interest Sufficient to Justify Limiting Contributions to SpeechNow.org Under Any Level of Scrutiny.**

Unable to demonstrate that SpeechNow.org creates any legitimate concerns about corruption, the FEC and amici manufacture two new versions of corruption that allegedly apply to SpeechNow.org. First, they claim that the expenditure of large amounts of money by independent groups constitutes corruption because candidates might feel gratitude for those expenditures. Second, they claim that corporate-form corruption applies to groups that do not use the corporate form. These arguments are baseless.

> **1.    Spending by independent groups and the possibility of gratitude by candidates is not corruption.**

As the Supreme Court stated in *NCPAC*, there is a "fundamental difference between money spent to advertise one's views independently of the candidate's campaign and money contributed to the candidate to be spent on his campaign." 470 U.S. at 497. Even with the developments in campaign finance jurisprudence in the years since that case was decided, there is still a fundamental difference between money given to groups involved with candidates and that have access to them, and money given to independent groups that make only independent expenditures. In *NCPAC*, the FEC made precisely the argument it makes here—large independent expenditures may tempt candidates to play favorites with those who make the expenditures. The Supreme Court's response applies equally here:

> [P]recisely what the 'corruption' may consist of, we are never told with assurance. The fact that candidates and elected officials may alter or reaffirm their own positions on issues in response to political messages paid for by the PACs can hardly be called corruption, for one of the essential features of democracy is the presentation to the electorate of varying points of view.

*Id.* at 498.  If groups coordinate with candidates, that is one thing.  But spending money on independent speech, according to the Court, is simply not corruption.  *Id.*  Indeed, the FEC itself seems to recognize this when it claims that the contribution limits cannot harm SpeechNow.org because Fred Young can simply pay for the exact same ads and suffer no limits on his independent expenditures at all.  *See* FEC's Opp. Mem. at 34.  But if Fred Young's expenditures do not constitute corruption, then neither do SpeechNow.org's expenditures on the exact same ads.[4]

        As one leading commenter put it, "the Supreme Court has never said that benefit to the candidate, with the inference that the candidate will be grateful for the benefit and will be tempted to provide favors accordingly, is enough to support regulation of campaign money. *McConnell* clearly held that benefit (even benefit followed by gratitude and temptation) is not sufficient to justify a campaign restriction."  Richard Briffault, *The 527 Problem...and the* Buckley *Problem*, 73 Geo. Wash. L. Rev. 949, 988 (2005).  *See also McConnell*, 540 U.S. at 156-157 n.51 ("Congress could not regulate financial contributions to political talk show hosts or newspaper editors on the sole basis that their activities conferred a *benefit* on the candidate.") (emphasis in original).[5]

---

[4] Amici's dubious assertion the Plaintiffs will have the opportunity for "*de facto* coordination" ignores the fact that, under its bylaws, SpeechNow.org must comply with the anti-coordination rules in 11 C.F.R. § 109.21.  *See* Decl. of David Keating, Ex. E, Art. X.  Amici's dissatisfaction with these provisions is not a sufficient reason to limit contributions to SpeechNow.org.  Like any individual making independent expenditures, SpeechNow.org will comply with the law defining independence.

[5] That the independent groups addressed were members of the institutional press is of no constitutional significance because "'the liberty of the press is no greater and no less' than the liberty of every citizen of the Republic." *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 802 (1978) (Burger, C.J., concurring).  *See also Ragin v. New York Times Co.*, 726 F. Supp. 953, 962 n.1 (S.D.N.Y. 1989) (same).

2.    **The Supreme Court's concern with the "distorting effects of immense aggregations of wealth" cannot justify the application of contribution limits to SpeechNow.org.**

The FEC's argument about the "distorting effects of immense aggregations of wealth" completely ignores the fact that the Supreme Court relied on that justification in cases involving statutes that singled out *corporations* for special limitations. *See Austin v. Michigan Chamber of Commerce*, 494 U.S. 652, 658-60 (1990); *FEC v. Beaumont*, 539 U.S. 146, 152-56 (2003). But Congress has not seen fit to single out unincorporated associations for special treatment under the campaign finance laws, so there is no occasion for this Court to consider whether such treatment might be constitutional on the same basis on which the Supreme Court has upheld limitations on corporations. The FEC is, in essence, asking this Court to pass judgment on a statutory provision that does not exist.

In any event, the Supreme Court's conclusion that limits on corporate expenditures can be justified because their immense aggregations of wealth can "distort" the electoral process has no application here. The Supreme Court relied on this rationale in *Austin* because special state-created advantages allow corporations to amass fortunes that bear no relation to public support for their political ideas. *See* 494 U.S. 652, 659-60 (1990). As an unincorporated association, SpeechNow.org does not enjoy the same advantages. It does not have perpetual life, it does not have shareholders at all, and, contrary to the FEC's claim, it does not enjoy "limited liability." The District of Columbia Uniform Unincorporated Nonprofit Associations Act simply states that members are not liable for the actions of the association "merely" because they are members. *See* D.C. Code § 29-971.06 (2008). In other words, their liability depends on their actions, not their status as members of the association alone. The only quality that SpeechNow.org shares with corporations is that it is a separate legal entity that can act in its own name. But that is true

of any entity that is legally separate from the individuals who comprise it, and thus the FEC's argument would apply to any legal entity as well.

Like the non-profit at issue in *MCFL*, but unlike corporations, SpeechNow.org's sole purpose is political speech, it has no shareholders, and it is independent of the influence of business corporations. *See Austin*, 494 U.S. at 661-664.[6] In short, SpeechNow.org is a voluntary political association whose donations reflect support for its ideas; it is not a business firm. *Id*.

Nor does the fact that SpeechNow.org is a "527" justify the contribution limits. Most, if not all, political, candidate, and party committees are 527s, yet the Supreme Court has never held that that justifies limits on their contributions. Moreover, the fact that SpeechNow.org, as a 527, will not be taxed on its donations is not "favorable treatment in the accumulation and distribution of its assets" as the FEC claims; it is simply the logical application of the tax code to a non-profit. Non-profits like SpeechNow.org are not taxed on their donations because those donations are already taxed when they are earned by the donor. *See* Gregg D. Polsky, *A Tax Lawyer's Perspective on Section 527 Organizations*, 28 Cardozo L. Rev. 1773, 1785-86 (2007). If SpeechNow.org earns interest or investment income on these donations, *it will be taxed on those earnings*. *See* 26 U.S.C. § 527(c). In short, SpeechNow.org is treated no better than the individuals who donate to it. Its donations are taxed when they are earned by the donor and SpeechNow.org is taxed on any income it earns on those donations, but that money is not taxed twice, as the FEC seems to think it should be. *See* Polsky, *supra*, at 1786.

In sum, if the FEC's position were correct, the Supreme Court's decision in *MCFL* would no longer be good law. The organization in *MCFL* was a corporation and a non-profit that enjoyed even more alleged state-created benefits than does SpeechNow.org.

---

[6] Although the corporation at issue in *Austin* was a nonprofit, it was funded by for profit corporations and it engaged in other business and nonpolitical activities. *See* 494 U.S. at 662-63 ("We are persuaded that the Chamber's members are more similar to shareholders of a business corporation than to the member of MCFL.").

## II.    Plaintiffs Will Suffer Irreparable Harm Without an Injunction.

Unless Plaintiffs receive a preliminary injunction, SpeechNow.org will not be able to accept the contributions pledged by the individual Plaintiffs.  That is because contributions by individual Plaintiffs of over $5,000 in a calendar year are illegal under 2 U.S.C. § 441a(a)(1)(C) and Fred Young's pledged contribution of $110,000 is illegal under 2 U.S.C. § 441a(a)(3). Without the contributions pledged by the individual Plaintiffs, SpeechNow.org will not be able to produce and run its political advertisements against Representative Dan Burton and Senator Mary Landrieu.  This is an actual and certain injury both to Plaintiffs' rights to free speech and their rights of association.  Acting separately, none of the Plaintiffs, including Fred Young, can fund both sets of advertisements.  Nor can they produce and run other political advertisements against other candidates for office who favor restrictions on free speech.  Furthermore, the window of time in which SpeechNow.org and its supporters need to speak narrows with each passing day because they wish to run advertisements in primaries.  Representative Burton's primary is on May 6th—less than two months away.  Thus, Plaintiffs will unquestionably suffer irreparable harm without an injunction.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).[7]

### A.  Plaintiffs' Injuries are Actual and Certain.

Plaintiffs face an actual and certain injury because they cannot—without breaking the law—produce and run their political advertisements if they do not receive a preliminary

---

[7] The FEC cites *Veitch v. Danzig*, 135 F.Supp. 2d 32 (D.D.C. 2001), for the proposition that where, as here, a preliminary injunction would "alter the status quo," Plaintiffs' face a higher burden.  But, as *Veitch* and other cases from this Circuit make clear, only mandatory—not prohibitive—injunctions "alter the status quo" and thus face a higher burden.  *See, e.g., Veitch*, 135 F. Supp. 2d at 35; *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000); *Columbia Hosp. for Women Found. v. Bank of Tokyo-Mitsubishi*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997). Plaintiffs seek a prohibitive injunction that restrains the FEC from enforcing contribution limits against it; it does not seek to require the FEC to take affirmative action.

injunction.  The FEC argues that there is no injury because Fred Young can break away from the rest of the Plaintiffs and fund the advertisements by himself.  But this argument ignores that Fred Young cannot fund all of the advertising that SpeechNow.org wishes to undertake.  More importantly, this approach destroys the village in order to save it—the FEC is essentially arguing that Plaintiffs can avoid injury to their rights of free speech and association if they will simply sacrifice those rights.  But if Fred Young is forced to disassociate from SpeechNow.org and its supporters, he loses the ability to associate with others with the time, knowledge, and experience to write, produce and broadcast ads to which he would like to add his voice.  At the same time, the other individual Plaintiffs will lose their ability to amplify their voices by associating with Fred Young.  *Cf. NCPAC*, 470 U.S. at 495 (stating that preventing individuals from associating for the purpose of making independent expenditures would "subordinate the voices of those of modest means as opposed to those sufficiently wealthy to be able to buy expensive media ads").

The FEC also argues that Plaintiffs can avoid injury if they raise money under the contribution limits and then use that money to fund advertisements.  But this argument ignores the limitations that contribution limits impose on the speech and association rights of groups like SpeechNow.org.  If the argument were correct, contribution limits could never be enjoined, because the government will always be able to claim that groups can speak even under the limits.  Furthermore, the argument ignores the importance of seed-funding to SpeechNow.org, not only to be able to run its ads, but to be able to engage in effective fundraising thereafter.  *See* Keating Decl. at ¶ 27; Crane Decl. at ¶ 8.  Only after it has used that funding to run its initial advertisements against Burton and Landrieu will SpeechNow.org be able to undertake successful fund-raising on a larger scale that includes smaller donations.[8]  *See* Keating Decl at ¶ 27; Crane

---

[8] Notably, SpeechNow.org, as a group of individuals, does not get the start-up benefits afforded to corporate or union PACs.  "Corporations, labor organizations, membership organizations, cooperatives, or corporations without

Decl. at ¶ 8.  Accepting small donations now that add up to over $1000—the trigger for political committee status—would require David Keating to spend his time complying with burdensome regulations that apply to PACs, but would provide no assurance that SpeechNow.org would ever be able to do what is was formed to do—produce and broadcast advertisements in time to affect elections that are rapidly approaching.

The FEC also argues that Plaintiffs have not suffered irreparable harm because they have not shown that their injury is actual and certain under *Elrod*.  Plaintiffs are not simply resting on mere allegations of harm, however, and there is nothing speculative or hypothetical about the injury they face.  The contributions clearly bar donations to SpeechNow.org in excess of those limits.  Thus, as a direct result of the contribution limits, SpeechNow.org cannot gather the funds necessary to produce and run its political advertisements.  It is "clear therefore that First Amendment interests [are] either threatened or in fact being impaired at the time relief [is being] sought."  *Elrod*, 427 U.S. at 373 (plurality opinion).

The cases on which the FEC relies are inapposite.  In *NTEU v. United States*, 927 F.2d 1253 (D.C. Cir. 1991), the court upheld the denial of a preliminary injunction against a ban on honoraria for executive branch employees, because the plaintiffs failed to show that they would "cease speaking or writing."  *See id.* at 1255-56.  Here, the law itself prohibits Plaintiffs from exercising their rights to speech and association by pooling their contributions, so the prohibition on their rights is not at all uncertain or contingent.  In *Wagner v. Taylor*, 836 F.2d 566 (D.C. Cir. 1987), the plaintiff could not receive an injunction on a First Amendment claim because, unlike Plaintiffs in this case, he could do nothing more than allege a violation of his First Amendment rights.  *See id.* at  576-77 n. 76.  In *Christian Knights of the Ku Klux Klan Invisible Empire, Inc.*

capital stock *may use general treasury monies, including monies obtained in commercial transactions and dues monies or membership fees, for the establishment, administration, and solicitation of contributions to its separate segregated fund.*"  11 CFR § 114.5(b) (emphasis added).

*v. District of Columbia*, 919 F.2d 148 (D.C. Cir. 1990), the court assumed that denying the Klan

the ability to march would have caused it irreparable harm; the court simply held that it was not

impermissible under *Elrod* for the route to be modified slightly under normal permitting

procedures. *See id.* at 149. Finally, the FEC's reliance on *Wisconsin Right to Life, Inc. v. FEC*,

Civ. No. 04-1260, 2004 WL 3622736 (D.D.C. Aug. 17, 2004), is misplaced because the court

based its conclusion that there was no irreparable harm on the fact that WRTL could pay for its

ads using a separate segregated account. *See id.* at * 4. But the Supreme Court later rejected this

argument, meaning that the premise of the lower court's finding of no irreparable harm was

simply wrong. *See WRTL II*, 127 S.Ct. at 2671-2672 n.9.

Moreover, Plaintiffs' First Amendment rights are being impaired by statutory

contribution limits that clearly and directly limit Plaintiffs' speech and association. As the D.C.

Circuit acknowledged in *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301

(D.C. Cir. 2006), "where a plaintiff alleges injury from a rule or regulation that directly limits

speech, *the irreparable nature of the harm may be presumed*." (emphasis added) (quoting *Bronx

Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349-50 (2d Cir. 2003).

### B.  Plaintiffs Face Imminent Injury.

The FEC argues that Plaintiffs do not face imminent injury because their injury is

hypothetical—that is, it relies upon the completion of a civil investigation that may not be

completed for some time. However, if Plaintiffs were to run their advertisements with the

pledged contributions, they would, as the FEC clearly acknowledges, be in direct violation of the

contribution law. Thus, for the reasons described in the previous section, the harm to Plaintiffs'

First Amendment rights is obvious and irreparable. That the FEC's investigation may take a few

months does not diminish the fact that, *right now*, Plaintiffs cannot run their political

advertisements without violating the law. There is, in other words, no question here about how the statute might be interpreted or whether the possibility of being found in violation of the law might chill speech. *See Community-Service Broadcasting of Mid-America, Inc. v. FCC*, 593 F.2d 1102, 1116 (D.C. Cir. 1978) (en banc) (stating that court's ultimate concern in seeking to identify the chilling effect of a statute is not with what government officials will actually do, but with how reasonable speakers will perceive the regulation).

Furthermore, the FEC has cited nothing to support the claim that a plaintiff cannot demonstrate irreparable harm if it may take time for an agency to proceed with its investigation and prosecution. *Wisconsin Right to Life, Inc. v. FEC*, No. 04-1260, 2006 WL 2666017 (D.D.C. Sept. 14, 2006), which the FEC cites in support of its argument, does not stand for that proposition. In that case, the district court simply noted, in concluding that the harm to the FEC would be outweighed by the harm suffered to WRTL, that an investigation would probably not conclude until after WRTL's ad was aired. *See id.* at *5. The court did not say that the length of an investigation precluded a finding of irreparable harm. In any event, given that the district court's denial of an injunction rested on several assumptions—for example, that WRTL could use media other than broadcast outlets and could alter its advertisements—that were explicitly rejected in the Supreme Court's decision in the case, the case does not support the FEC's argument that SpeechNow.org is not harmed. *See WRTL II*, 127 S.Ct. at 2671-2672 n.9.

### C. Plaintiffs' Injury is Beyond Remediation.

In arguing that Plaintiffs' harm is not beyond remediation, the FEC ignores Plaintiffs' real injury—not being able to produce and run their political advertisements—which is an injury to First Amendment rights, the loss of which necessarily constitutes irreparable harm. Thus, the trio of cases on which the FEC relies for the proposition that responding to an administrative

enforcement proceeding does not constitute irreparable harm—none of which involve the First Amendment—are inapposite. *See Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980); *Sears Roebuck & Co. v. NLRB*, 473 F.2d 91, 93 (D.C. Cir. 1972).

As noted earlier, Plaintiffs' injury increases as the elections in which it wants to run ads approach because SpeechNow.org must begin broadcasting its ads sufficiently in advance to have an impact. *See* Keating Decl. at ¶ 28. Once its window of opportunity passes, SpeechNow.org has forever lost the chance to impact those elections. To say that Plaintiffs' injury is not beyond remediation is absurd.

> **D.    A Preliminary Injunction Will Prevent the Harm to Plaintiffs Caused by the Contribution Limits.**

The FEC claims that if Plaintiffs are granted a preliminary injunction but later lose this case, the FEC may still, under the so-called "retroactivity doctrine," pursue civil enforcement against SpeechNow.org and its donors. FEC's Opp. Mem. at 39-41. But the FEC does not cite a single case in which a previously-enjoined government actor has later pursued an enforcement action against the party that sought the injunction. Instead, it bases its argument on quotes taken out of context from easily distinguishable cases. For example, *Donaldson v. United States Department of Labor*, 930 F.2d 339 (4th Cir. 1991), involved farm owners who had obtained a preliminary injunction against the Department of Labor requiring the Department to approve wages offered to migrant farm workers. After that injunction was dissolved, the workers sued the owners in a separate suit, and the court held that the earlier injunction against the Department did not prevent the subsequent suit by the workers. *See id.* at 346. In short, *Donaldson* involved suits by entirely different parties involving different claims than those originally enjoined. *See*

*id.* at 344. It does not support the FEC's claim that it could later prosecute Plaintiffs for actions taken under an injunction designed to prevent precisely that type of prosecution.

The FEC also relies heavily on dicta from Justice Stevens's concurring opinion in *Edgar v. MITE*, 457 U.S. 624 (1982), but the FEC mischaracterizes his argument, which was confined to the power of *federal* judges to immunize parties from subsequent *state* prosecution. As Justice Stevens noted, "federal courts are courts of limited jurisdiction. . . . There simply is no constitutional or statutory authority that permits a *federal* judge to grant dispensation from a valid *state* law." *Id.* at 653 (emphases added). *See also id.* at 647 (stating that "there is no federal rule of law that would require the state courts to absolve MITE from liability"). The FEC's reliance on *Suster v. Marshall*, 149 F.3d 523 (6th Cir. 1998), which relied on *MITE*, is misplaced for the same reason. *Id.* at 527.

None of these cases support the FEC's unique claim that a federal court's preliminary injunction does not immunize a party from a future federal prosecution by the very agency enjoined for precisely the conduct that the injunction purported to allow that party to undertake. This is perhaps why the D.C. Circuit has stated that it is "obvious" that "no federalism concerns would prevent an immunizing effect" for a plaintiff who acts under the protection of a federal judgment or injunction. *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990).[9]

---

[9]The FEC also claims that an injunction would be ineffective because SpeechNow.org has not joined the Attorney General as a defendant. FEC's Opp. Mem. at 41 n.24. Even assuming that the Attorney General would charge SpeechNow.org with a knowing and willful violation for relying in good faith on a preliminary injunction, it is questionable whether the Attorney General *could* do so, because reliance on a preliminary injunction "would raise a serious question whether [a party] had the state of mind necessary for a violation." *Clarke*, 915 F.2d at 701. In any event, having by that time already made a sufficient showing to obtain a preliminary injunction against the FEC, there would be little obstacle to SpeechNow.org obtaining a similar injunction against the Attorney General.

**III.    An Injunction Will Not Substantially Injure the FEC and Will Advance the Public's Interest.**

The FEC argues that it and the public will be harmed because the limits on contributions to political committees have been on the books for over thirty years, the limits on contributions to candidates have been upheld, and the FEC has an interest in enforcing those limits.  The first two points are irrelevant.  This is an as-applied challenge involving issues that the Supreme Court has not yet squarely addressed.  The third point rests on the false assumption, rebutted above, that SpeechNow.org raises the specter of corruption or its appearance.

The FEC also argues that an injunction will harm the public because of its interest in seeing the campaign finance laws enforced, but this ignores the impact of those laws in this case on fundamental rights to free speech and association.  More important than enforcement of the campaign finance laws against groups that pose no concerns about corruption is the public's interest in a vigorous and open marketplace of ideas:  "[T]here is practically universal agreement that a major purpose  of [the First] Amendment was to protect the free discussion of governmental affairs . . . includ[ing] discussion of candidates."  *Mills v. Alabama*, 384 U.S. 214, 218 (1966).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that their motion for preliminary injunction be granted.

Dated:  March 12, 2008.

Respectfully submitted,

/s/Steven M. Simpson
Steven M. Simpson (DC Bar No. 462553)
William H. Mellor (DC Bar No. 462072)
Robert Gall (DC Bar No. 482476)
Paul M. Sherman (DC Bar No.978663)

INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321
Email: ssimpson@ij.org


Stephen M. Hoersting*
Bradley A. Smith*
Michael Darner*
CENTER FOR COMPETITIVE POLITICS
124 W. Street South, Suite 201
Alexandria, VA 22314
Tel: (703) 894-6800
Email: smhoer@aol.com, BSmith@law.capital.edu

*Attorneys for Plaintiffs*

*Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th Day of March, 2008, a true and correct copy of the **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was electronically filed using the court's ECF system and sent via the ECF electronic notification system to the following counsel of record:


Robert W. Bonham, III
David B. Kolker
Steve N. Hajjar
FEDERAL ELECTION COMMISSION
999 E. Street, N.W.
Washington, DC  20463

And I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Donald J. Simon
SONOSKY, CHAMBERS, SACHSE
ENDERSON & PERRY, LLP
1425 K Street, N.W.
Washington, DC  20005

Fred Wertheimer
DEMOCRACY 21
1878 I Street, N.W.
Suite 500
Washington, DC  20005


Counsel for *Amicus Curiae* Democracy 21

J. Gerald Hebert
Paul S. Ryan
THE CAMPAIGN LEGAL CENTER
1640 Rhode Island Ave., N.W.
Suite 650
Washington, DC  20036


Counsel for *Amicus Curiae* Campaign Legal Center

/s/ Steven M. Simpson