**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SPEECHNOW.ORG, *et al.*,          :
                                  :
          Plaintiffs,             :
                                  :
     v.                           :  Civil Action No. 08-0248 (JR)
                                  :
FEDERAL ELECTION COMMISSION,      :
                                  :
          Defendant.              :

<u>**MEMORANDUM AND FINDINGS**</u>

          The plaintiffs filed a complaint and a motion for a
preliminary injunction in February 2008, asserting that it was
unconstitutional for the FEC to apply its contribution limit
rules to a group such as Speechnow.  Speechnow's business is so-
called "independent expenditures": advertisements that advocate
the election or defeat of particular candidates, but are not
coordinated with any candidates or campaigns.  Because these
advertisements have the purpose of promoting candidates, and
because Speechnow proposes to collect more that $1000 per year,
the FEC would regulate Speechnow as a political committee, and
place various limits on the contributions Speechnow could
receive.

          In July 2008, I issued an order denying plaintiffs'
motion for a preliminary injunction.  Dkt. 32.  I found that the
contribution limits on independent expenditure groups supported a
substantial state interest, and that the plaintiffs were unlikely
to succeed on the merits.  Plaintiffs appealed, but

simultaneously pursued the unique procedure set forth in 2 U.S.C. § 437h, under which the constitutional questions presented would be certified to the en banc Court of Appeals, following discovery and findings of fact.  After I agreed to certify five such questions, plaintiffs held their appeal in abeyance.

The task before me is not to answer any constitutional questions, or to render a judgment of any kind.  Instead, I am to make findings of fact that will allow the Court of Appeals to answer the constitutional questions I certify.

The parties submitted several hundred proposed findings of fact, accompanied by thousands of pages of studies, reports, articles, and expert declarations.  Most of the proposed findings, and nearly all of the supporting material, centered on the question of whether or not the challenged provisions are necessary to ward off corruption -- or the appearance of corruption -- in federal elections.  To my mind, the facts needed to answer that question are the kind of "facts" that legislatures find.  They are not the kind of facts that can be determined in a judicial forum on the basis of a cold paper record full of hearsay and opinion.  Accordingly, I directed the parties jointly to submit a set of proposed findings that focused on three questions: (1) How is SpeechNow organized, and how are the individual plaintiffs involved with it? (2) What are SpeechNow's plans? and (3) How do the challenged provisions affect

SpeechNow's plans?  The findings provided below draw from that document.  They are essentially those findings on which the parties agree, and are the kinds of facts (and conclusions of law, see, e.g., ¶¶ 51-54) that are typically resolved in a judicial forum.

### Questions for Appeal

1. Whether the contribution limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3) violate the First Amendment by preventing David Keating, SpeechNow.org's president and treasurer, from accepting contributions to SpeechNow.org in excess of the limits contained in §§ 441a(a)(1)(C) and 441a(a)(3).

2. Whether the contribution limit mandated by 2 U.S.C. § 441a(a)(1)(C) violates the First Amendment by preventing the individual plaintiffs from making contributions to SpeechNow.org in excess of $5000 per calendar year.

3. Whether the biennial aggregate contribution limit mandated by 2 U.S.C. § 441a(a)(3) violates the First Amendment by preventing Fred Young from making contributions to SpeechNow.org that would exceed his individual biennial aggregate limit.

4. Whether the organizational, administrative, and continuous reporting requirements set forth in 2 U.S.C. §§ 432, 433, and 434(a) violate the First Amendment by requiring David Keating, SpeechNow.org's president and treasurer, to register

SpeechNow.org as a political committee, to adopt the organizational structure of a political committee, and to comply with the continuous reporting requirements that apply to political committees.

5. Whether 2 U.S.C. §§ 431(4) and 431(8) violate the First Amendment by requiring David Keating, SpeechNow.org's president and treasurer, to register SpeechNow.org as a political committee and comply with the organizational and continuous reporting requirements for political committees before SpeechNow.org has made any expenditures or broadcast any advertisements.

## Findings of Fact

### I. The structure of SpeechNow.org and the involvement of the individual plaintiffs

#### A. SpeechNow.org

1. SpeechNow.org ("SpeechNow") is an unincorporated nonprofit association organized under the District of Columbia Uniform Unincorporated Nonprofit Associations Act, D.C. Code § 29- 971.01 *et seq.*, and registered as a "political organization" under section 527 of the Internal Revenue Code. Keating Decl., Ex. G, SpeechNow.org Internal Revenue Form 8871.

2. The general powers of SpeechNow lie with five voting "members": David Keating, Jon Coupal, Edward Crane, Daniel Shapiro, and Richard Marder.  Bylaws, Art. I, § 5; Art. III, §§ 1, 2.

- 4 -

3. SpeechNow's bylaws designate four officers of the association: president, vice president, secretary, and treasurer. *Id.*, Art. V, § 1.  Keating is the president and treasurer of SpeechNow, and he administers all of the association's affairs. Keating Decl. at ¶ 2.  Coupal is the vice president and secretary.  Keating Decl., Ex. D, Member Action by Written Consent in Lieu of an Organizational Meeting of SpeechNow.

4. SpeechNow undertakes that it will operate solely on private donations from individuals.  Keating Decl. at ¶ 8; Bylaws, Art. II.  Under its bylaws, SpeechNow cannot accept, directly or indirectly, any donations or anything of value from business corporations, labor organizations, national banks, federal government contractors, foreign nationals, political parties, or political committees.  Keating Decl. at ¶ 8; Bylaws, Art. VI, § 9; Art X, § 1.

5. Under its bylaws, SpeechNow cannot engage in business activities, including the provision of any goods or services, or any advertising or promotional activity that resulting in income to SpeechNow, except as such activity may attract membership dues or donations.  Keating Decl. at ¶ 12. SpeechNow cannot offer to any donors or members any benefit that would operate as a disincentive for them to disassociate with SpeechNow on the basis of the organization's position on a political issue, and it cannot offer its donors or members credit

cards, insurance policies, savings plans, training, education, business information, or any other benefits other than those that are necessary to enable recipients to engage in the promotion of SpeechNow's political ideas.  Keating Decl. at ¶ 8; Bylaws, Art. VI, §§ 6, 8.

6. SpeechNow is independent of any political candidates, political committees, and political party committees, within the meaning of federal campaign finance statutes and the FEC's coordination rules, and its bylaws require that it operate wholly independently of any of these entities.  Keating Decl. at ¶ 9; Bylaws, Art. VI, § 9; Art. X, §§ 2-10.  SpeechNow cannot make contributions or donations of any kind directly or indirectly to any FEC-regulated candidate or political committee, and it cannot coordinate its activities, as defined in 2 U.S.C. §§ 441a(a)(7)(B) & (C) and 11 C.F.R. Part 109, with any candidates, national, state, district, or local political party committees, or their agents.  Bylaws, Art. VI § 10; Art. X §§ 2-10.

7. SpeechNow's bylaws prohibit it from using any vendors for services in producing or distributing its communications featuring a candidate for federal office if that vendor was also engaged during the same election cycle by the candidate featured in the communication.  Bylaws, Art. X, § 2. The bylaws similarly prohibit SpeechNow from employing any

individuals who were employed during the same election cycle by
any candidate featured in any of SpeechNow's communications.
*Id.*, Art. X, § 3.

8. SpeechNow's bylaws promote the independence of the
association's speech by requiring members, officers, employees,
and agents of the association to read and understand the FEC's
rules concerning coordination, 11 C.F.R. § 109.21, Bylaws, Art.
X, § 4, and by prohibiting them from engaging in activities that
might lead to coordination with candidates.  Bylaws, Art. X,
§§ 5-10.

9. Under SpeechNow's bylaws, all of the obligations and
prohibitions found in the bylaws must be communicated to all
members, officers, employees, agents, and donors of SpeechNow,
and employees and agents must sign an acknowledgment of these
obligations as a condition of participating in any association
activities.  Bylaws, Art. X, § 11.  Each of SpeechNow's members
and officers has signed such an acknowledgment.  Keating Decl.
Ex. I, SpeechNow Affirmation.

10. SpeechNow's purpose is "expressly advocating the
election of candidates who support rights to free speech and
association and the defeat of candidates who oppose those rights,
particularly by supporting campaign finance laws."  Am. Compl.
¶ 8.

**B. Involvement of individual plaintiffs**

11. David Keating is solely responsible for SpeechNow's day-to-day activities.  SpeechNow Response to FEC Interrogatory 1, FEC Exh. 105 at 16; Keating Dep. at 149, FEC Exh. 11.

12. Keating decides in what elections SpeechNow will run advertisements supporting or opposing particular candidates. Keating keeps the other officer (vice-president Jon Coupal) and four board members of SpeechNow apprised of his decisions and expects to consult them from time to time.  SpeechNow Response to FEC Interrogatory 7, FEC Exh. 105 at 22-23.

13. Keating created SpeechNow's web site, participates in the creation of all advertisements SpeechNow wishes to publish or broadcast, and administers all of SpeechNow's affairs.  Am. Compl. ¶ 8.

14. Keating personally selected the candidates for SpeechNow to support or oppose in 2008.  Keating Dep. at 162, FEC Exh. 11.  Keating also expects to pick the candidates that SpeechNow will support or oppose in future elections, with the possible help of paid staff.  Keating Dep. at 162, FEC Exh. 11.

15. Keating would like to donate money to SpeechNow to support its mission and activities.  Keating Decl. at ¶ 39. Keating would donate $5,500 to the group, and make additional contributions in the future, if doing so would not require

SpeechNow to register as a political committee under federal law. Keating Decl. at ¶¶ 39, 51-52.

16. Fred M. Young would like to donate $110,000 to SpeechNow.  Declaration of Fred M. Young, Jr. in Support of Proposed Findings of Fact (hereinafter, "Young Decl.") at ¶ 6.

17. Other than donating to SpeechNow, Young does not anticipate any involvement with SpeechNow in the future.  Young Dep. at 88, FEC Exh. 19.

18. Edward Crane would like to donate $6,000 to SpeechNow.  Declaration of Edward Crane in Support of Proposed Findings of Fact (hereinafter, "Crane Decl.") at ¶ 6.  He would like to make additional contributions to SpeechNow in the future. *Id*. at ¶ 8.

19. Young and Crane support SpeechNow's mission and believe that calling for the election or defeat of candidates based on their support for First Amendment rights is an ideal way to affect policy and promote the importance of free speech. Young Decl. at ¶ 3; Crane Decl. at ¶ 3.  They both lack the time and experience to produce advertisements that can reach a wide segment of the population.  Young Decl. at ¶ 4; Crane Decl. at ¶ 4.  They believe that associating with other like-minded individuals and a group like SpeechNow is a more effective way to speak against candidates who support restrictions on free speech. *Id*.

20. Brad Russo and Scott Burkhardt support SpeechNow's mission and believe that calling for the election or defeat of candidates based on their support of First Amendment rights is an ideal way to affect policy and promote the importance of free speech.  Russo Decl. at ¶ 3; Burkhardt Decl. at ¶ 3.

21. Russo and Burkhardt want to make immediate donations to SpeechNow of $100 each.  Keating Decl. at ¶¶ 50-51. SpeechNow has decided not to accept these donations because doing so would bring it closer to becoming a "political committee" under the campaign finance laws.  *Id.* at ¶ 50.

22. All of the individual plaintiffs have read and agreed to abide by SpeechNow's bylaws.  Keating Decl. at ¶¶ 8, 9; Crane Decl. at ¶ 5; Young Decl. at ¶ 5; Russo Decl. at ¶ 5; Burkhardt Decl. at ¶ 5.  They acknowledge that their donations will be used to fund speech, including advertisements, that will advocate the election and/or defeat of candidates to federal office based upon their positions on freedom of speech and campaign finance laws.  They understand that SpeechNow is an independent group that will not make any contributions to candidates, political committees, or political parties (or any of their agents) and will not coordinate its activities with candidates, candidate committees, or political party committees. Keating Decl. at ¶ 9; Crane Decl. at ¶ 5; Young Decl. at ¶ 5; Russo Decl. at ¶ 5; Burkhardt Decl. at ¶ 5.

## II. SpeechNow's planned activities

### A. Fundraising

23. SpeechNow intends to solicit donations from individuals to cover operating expenses and to buy political advertising that promotes the election or defeat of candidates based on their positions on free speech and associational rights. Keating Decl. at ¶ 11.  Some of SpeechNow's solicitations will refer to particular candidates for federal office by name.  *Id.*; Declaration of Steven M. Simpson in Support of Plaintiffs' Proposed Findings of Fact (hereinafter, "Simpson Decl.") Ex. 1, Supplement to AOR 2007-32 (Sample SpeechNow Solicitation).

24. In its solicitations, SpeechNow intends to inform potential donors that their donations may be used for political advertising that will advocate the election or defeat of candidates to federal office based on their support for First Amendment rights.  Keating Decl. at ¶ 11.  Under its bylaws, SpeechNow must also advise donors that their donations are not tax deductible and that they will be spent at the sole discretion of SpeechNow.  *Id.* at ¶ 13; *Bylaws*, Art. VI, § 11.

25. SpeechNow's solicitations will state that donors will not play a role in determining how their donations will be spent.  Draft Solicitations for SpeechNow, SNK0259-0273 at 0260, 0263, 0268, 0273, FEC Exh. 20.

26. Keating has set up a PayPal account to allow individuals to donate money to SpeechNow.  Keating Decl. at ¶ 53; Keating Decl. Ex. M, Email from PayPal.com confirming SpeechNow account.

27. As of August 2008, 182 people had indicated on SpeechNow's website that they were interested in receiving the association's newsletters.  SNK0370-0372, FEC Exh. 20.  Seventy-five of those people stated that they were interested in making a donation.  *Id.*

## B. Advertising

28. SpeechNow intended to run advertisements on television and on other media during the 2008 election cycle and plans to run similar advertisements in future election cycles.  Keating Decl. at ¶¶ 15-20, 30.

29. For the 2008 election cycle, SpeechNow had prepared television scripts for four advertisements.  Keating Decl., Ex. J, SpeechNow Television Scripts.  Two of the advertisements called for the defeat of Dan Burton, a Republican Congressman who ran for reelection in the Fifth District of Indiana.  Both ads criticized Representative Burton for voting for a bill that would restrict the speech of many public interest groups.  The first urged voters to "Say no to Burton for Congress."  The second stated: "Dan Burton voted to restrict our rights.  Don't let him do it again."  *Id.*; Keating Decl. at ¶ 18.  SpeechNow would have

liked to broadcast these advertisements in the Fifth District of Indiana, where Representative Burton was running for office. *Id.* at ¶¶ 20-24.

30. The other two advertisements called for the defeat of Mary Landrieu, a Democratic Senator who ran for reelection in Louisiana. Keating Decl. at ¶ 19. Both ads criticized Landrieu for voting for a law to restrict the speech of public interest groups. The first urged voters to "Say no to Landrieu for Senate." The second concluded by saying: "Our founding fathers made free speech the First Amendment to the Constitution. Mary Landrieu is taking that right away. Don't let her do it again." *Id.*; Keating Decl., Ex. J. SpeechNow would have liked to broadcast those advertisements in Louisiana, where Senator Landrieu was running for office. Keating Decl. at ¶¶ 20-24.

31. The production costs for those advertisements would have been approximately $12,000. Keating Decl. at ¶ 21; Simpson Decl. Ex. 2, Declaration of Ed Traz in Support of Plaintiffs' Motion for Preliminary Injunction with Exhibits, dated February 8, 2008, at ¶¶ 3-5.

32. The cost to air the advertisements would have depended on the number of times they ran and the size of the audience SpeechNow wanted to reach. Keating Decl. at ¶¶ 21-24; Simpson Decl. Ex. 2 at ¶¶ 3-5.

33. Keating would have liked to run the ads enough times so that the target audience could have viewed the ads at least ten times.  Such an ad buy would have cost roughly $400,000.  Keating Decl. at ¶ 24.

34. Keating made and will make the decisions about where and in what races to run SpeechNow's advertisements, although he expects to keep the other members of SpeechNow apprised of his decisions.  Keating Decl. at ¶ 25.  Keating will base his decisions primarily on two factors: (1) the candidates' records on freedom of speech and/or campaign finance laws; and (2) whether the race is close enough that SpeechNow's ads might have an impact on the outcome.  *Id.* at ¶ 26.

35. Keating decided that SpeechNow should run ads in Congressman Burton's primary because the Congressman voted for H.R. 513, a bill that restricted the free speech rights of certain non-profit organizations, and Keating felt that Burton was vulnerable to defeat.  Keating Decl. at ¶ 27.  Keating spoke to Congressman Burton's opponent, John McGoff, and discovered that he supported freedom of speech and opposed campaign finance laws that infringed on freedom of speech.  *Id.*  As a result, Keating concluded that running ads highlighting Congressman Burton's record on campaign finance laws would be a good way to convey to Republicans that they should support freedom of speech

and oppose campaign finance laws that would infringe on rights to free speech. *Id.*

36. He decided that SpeechNow should run ads against Mary Landrieu because her election was a high-profile race, and she has consistently supported campaign finance legislation that in Keating's view infringed on freedom of speech. Keating Decl. at ¶ 28. Keating never ascertained what Landrieu's opponent's position was on speech issues because it was not clear at the time who Landrieu's ultimate opponent would be. He concluded that Landrieu's opponent could not have a worse position on free speech (from SpeechNow's perspective), and that running ads in her race would increase the chances of her defeat and garner attention for SpeechNow and its message and mission. *Id.*

37. SpeechNow would have run ads in additional races during the 2008 election cycle if it had been able to do so without becoming a "political committee," subject to contribution limits and other requirements that apply to political committees. SpeechNow would consider broadcasting advertisements opposing any candidate who voted for the Bipartisan Campaign Reform Act; any candidate who voted for or sponsored H.R. 513 as passed by the House of Representatives in 2006, or similar legislation; or any candidate who supported legislation to create a Federal Election Administration such as that proposed by H.R. 421 in the 110th Congress. SpeechNow would consider broadcasting

- 15 -

advertisements supporting candidates who took the opposite positions.  Keating Decl. at ¶ 29.

38. If it is able to operate without being treated as a political committee under federal campaign finance laws, SpeechNow would run ads in future election cycles.  In the 2010 election cycle, SpeechNow would like to run advertisements opposing North Dakota Democratic Senator Byron Dorgan.  Keating Decl. at ¶ 30.  SpeechNow would consider running advertisements opposing Alaska Republican Senator Lisa Murkowski as well, if she has a credible primary opponent.  *Id.*

39. If SpeechNow were able to function and run ads in future elections without becoming subject to the contribution limits and other requirements that apply to political committees, it intends to make decisions about where to run such ads consistent with the general approach described in paragraph 34. Keating Decl. at ¶ 26.  If SpeechNow is able to raise enough funds, it intends to use methods such as candidate research to determine the past statements and positions of candidates on free speech, and public opinion polling to obtain more information about the viability of particular candidates in particular races. *Id*. at ¶ 32.

### III. The effect of the challenged provisions on the plaintiffs' plans

#### A. Contribution limits

40. FECA limits contributions by individuals to nonconnected political committees to $5,000 per calendar year. 2 U.S.C. §§ 431(11), 441a(a)(1)(C).

41. If Keating, Crane, or Young made contributions to SpeechNow in the amounts and for the purposes stated in their declarations, their contributions would violate the law because they exceed the contribution limits set forth in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3). Simpson Decl. Ex. 14 (FEC Response to Request for Admission No. 12).

42. In addition to exceeding the Act's limit on contributions to a political committee, Young's desired contribution would exceed the Act's biennial aggregate limit of $108,200 on contributions by an individual to all candidates and committees. 2 U.S.C. §§ 431(11), 441a(a)(1)(C), 441a(a)(3); *see* 72 Fed. Reg. 5294, 5295 (Feb. 5, 2007).

43. The planned contributions by Russo and Burkhardt are below the Act's limit on contributions by individuals to nonconnected committees. 2 U.S.C. §§ 431(11), 441a(a)(1)(C), 441a(a)(3); *see* 72 Fed. Reg. 5294, 5295 (Feb. 5, 2007).

44. Russo and Burkhardt's planned contributions will not put them over the aggregate contribution limit. Burkhardt

Dep. at 25-26, 31-32, FEC Exh. 7; Russo Dep. at 30-32, FEC Exh. 13.

45. Both SpeechNow and Keating (as its treasurer) face the threat of prosecution if SpeechNow accepts contributions over the limits contained in 2 U.S.C. §§ 441a(a)(1)(C) and 441a(a)(3). Keating, Crane, and Young face a threat of prosecution if they make contributions to SpeechNow above those limits. Simpson Decl. Ex. 14 (FEC Responses to Requests for Admission Nos. 1-3, 5-13).

46. Under 2 U.S.C. § 437g(d) and the FEC's practices and policies, Keating, as treasurer of SpeechNow, would be liable in his personal capacity for any knowing and willful violations of the contribution limits or reporting obligations that he commits. Simpson Decl. Ex. 14 (FEC Responses to Requests for Admission Nos. 10 & 11).

47. If SpeechNow had accepted the planned contributions of the individual plaintiffs, SpeechNow would have had enough money to fund advertisements in at least two election contests during the 2008 election cycle. Keating Decl. at ¶ 22; Simpson Decl. Ex. 2 at 4; *see* Keating Decl. Ex. K, Traz Group Bid for Burton and Landrieu Advertisements.

48. SpeechNow has voluntarily chosen not to accept any contributions during the pendency of this case -- even contributions of less than $5,000 -- and has declined the

contributions that have been offered to date because it does not wish to become a "political committee" under federal law. Keating Dep. at 165-166, FEC Exhibit 11; SpeechNow Response to FEC Interrogatory 9, FEC Exh. 105 at 23.

### B. Organizational, administrative, and reporting requirements

49. Currently, SpeechNow reports its contributions and expenditures under the reporting requirements for those groups that make independent expenditures.  Keating Decl. at ¶ 35. Groups "other than political committees" that make independent expenditures must report their activities pursuant to the FEC regulations at 11 CFR §§ 104.4(a),(e), and (f), and § 109.10. Scott Dep. at 95:7-98:14.

50. To report its independent expenditures, SpeechNow uses the "Report of Independent Expenditures Made and Contributions Received," or FEC Form 5.  Simpson Decl. Ex. 31, FEC Form 5, Report of Independent Expenditures Made and Contributions Received; Scott Dep. at 101:6-102:1.  This form requires the filer to list the total contributions received and the total expenditures made during the period on a one-page form, and then to list those who contributed to the independent expenditure and the payees for the independent expenditures.  It is accompanied by three pages of instructions.  Simpson Decl. Ex. 32, Instructions for FEC Form 5 and Related Schedules.

51. If SpeechNow decided to make independent expenditures against candidates for state or local office, its reporting obligations to the FEC would not change or increase. Scott Dep. at 107:7-108:5.

52. Because SpeechNow does not accept any targeted or "earmarked" funds, it need only disclose all of its contributors who provided money "for the purpose of furthering" its independent expenditures.  Keating Decl. at ¶ 36; 2 U.S.C. 434(c)(2)(C).  For each independent expenditure SpeechNow were to make, SpeechNow would have to disclose all donors whose contributions were given for such purpose and were used to fund any portion of the independent expenditure at issue.  *Id.*

53. If SpeechNow were to accept donations that, in the aggregate, were in excess of $1,000, it would have to register as a "political committee" with the FEC.  Keating Decl. at 45; Simpson Decl. Ex. 14 (FEC Response to Request to Admit No. 1); Scott Dep. at 93:3-14.

54. If SpeechNow were deemed to be a political committee, it would be classified as a "non-connected" committee. Scott Dep. at 17:14-18:2.

55. David Keating, as treasurer of SpeechNow, is responsible for complying with the reporting requirements that would apply to SpeechNow if it were treated as a political

committee under federal law.  Keating Decl. at ¶ 14; *Bylaws*, Art.
V, § 8.

56. Any organization that qualifies as a political
committee must register with the FEC by filing FEC Form 1, a
four-page form.  2 U.S.C. § 433; FEC Form 1 and Instructions, FEC
Exh. 125-126.  The four-page form requires committees to list the
committee name and address, to designate a treasurer and
custodian of records, and to list all bank accounts in which
committee funds are deposited.  Simpson Decl. Ex. 26, FEC Form 1,
Statement of Organization; Scott Dep. at 122:15-123:14.  Any
changes to the Statement of Registration must be made within 10
days.  Scott Dep. at 123:22-124:6.  The form comes with an
additional five pages of instructions.  Simpson Decl. Ex. 27,
Instructions for FEC Form 1.

57. Political committees must file periodic reports for
disclosure to the public of all receipts and disbursements to or
from a person in excess of $200 in a calendar year, as well as
total operating expenses and cash on hand.  *See* 2 U.S.C. §§ 433-
34.

58. All costs associated with a fundraiser for a non-
connected committee must be treated as expenses to be paid by the
committee lest any costs for the event be treated as an in-kind
contribution attributable to the committee.  Scott Dep. at 142:1-
143:7.  The costs are to be determined by assessing the usual and

normal charge for, or fair market value of, that portion of the home, invitations, and food. *Id.* at 143:8-14.  These costs must be reported on Form 3X. *Id.* at 123:7-16; Simpson Decl. Ex. 29 at 10-11 (Instructions for Schedule A, Itemized Receipts).

59. If a non-connected committee were to make independent expenditures in state or local elections, it would have to allocate its costs for fundraising and communications according to regulations at 11 CFR Part 106.  Scott Dep. at 143:15-144:5.  The committee would also report the allocations using various Schedules H, which are accompanied by seven pages of instructions.  Scott Dep. at 146:12-148:9; Simpson Decl. Ex. 29 at 23-30.

60. Under 2 U.S.C. § 434(c), if SpeechNow were treated as a political committee, it would have to file statements with the FEC reporting the identities of those who contributed "for the purpose of furthering" its advertisements and other communications, along with the amounts contributed and the other information required by this provision. Keating Decl. at ¶ 35; 2 U.S.C. § 434(c)(2)(c).

61. Under 2 U.S.C. § 441d(d)(2), SpeechNow's advertisements would have to include a statement indicating that SpeechNow was responsible for the content of the advertisement. Keating Decl. at ¶ 34.

62. Under 2 U.S.C. § 441d(a), all of SpeechNow's advertisements and other communications would have to include its name, address, and telephone number or World Wide Web address, along with a statement indicating that the communication was paid for by SpeechNow and was not authorized by any candidate or candidate's committee.  Keating Decl. at ¶ 33.

63. The FEC's Reports Analysis Division (RAD) analyzes reports filed by committees and other entities to determine whether they are in compliance with campaign finance laws and regulations.  Scott Dep. at 67:7-11.  Employees of RAD often send committee treasurers Requests for Additional Information (RFAI) that seek information necessary for the Commission to determine whether a committee is complying with the law.  Scott Dep. at 71:13-72:1.  A failure of a political committee to answer an RFAI can result in an investigation and a recommendation that the Commission seek a conciliation agreement with the committee that results in a civil penalty.  *Id*. at 73:7-20.

64. All administrative fines issued by the Commission relate to the failure to properly report the activities of a political committee.  Scott Dep. at 80:19-81:6.  The Commission resolves approximately 100 administrative fine matters per year, and the amount of fines collected is $201,963 from the Administrative Fines Program alone.  Simpson Decl. Ex. 30, Federal Election Commission 2006 Annual Report, at 7.  This is an

average civil penalty of at least $2,000.  Still other civil penalties for failing to properly administer or report the activities of political committees are collected through the Commission's standard enforcement process, and alternative dispute resolution programs.  Scott Dep. at 82:3-12.

65. The FEC can investigate alleged violations of the campaign finance laws that are brought to its attention through administrative complaints filed under 11 CFR § 111.4 or that its staff discovers and has "reason to believe" that a violation has occurred.  Simpson Decl. Ex. 14 (FEC Response to Interrogatory No. 6).

JAMES ROBERTSON
United States District Judge